IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>AMBER LYNN LANPHEAR,<br><br>Defendant/Movant. | Cause No. CR 19-19-BLG-SPW<br>CV 21-71-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE<br>OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Amber Lynn Lanphear's motion to vacate, set aside, or correct her sentence, pursuant to 28 U.S.C. § 2255. Lanphear is a federal prisoner proceeding pro se.

In reviewing Lanphear's motion, the Court has listened to the recording of her change of plea hearing on February 6, 2020. *See* Minutes (Doc. 44). The United States will be required to order the transcript for the record and to deliver a copy to Lanphear. *See* 28 U.S.C. § 753(f).

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A

1

petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On February 22, 2019, a grand jury indicted Lanphear on one count of conspiring to possess five grams or more of actual methamphetamine with intent to distribute it, a violation of 21 U.S.C. § 846 (Count 1); possessing the same with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1) (Count 2); possessing a firearm in furtherance of the drug trafficking crimes alleged in Counts 1 and 2, a violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and being a felon in possession of firearms, a violation of 18 U.S.C. § 922(g)(1) (Count 4). *See* Indictment (Doc. 7) at 1–4.

Due to the quantity of methamphetamine alleged, Lanphear faced a five-year mandatory minimum prison sentence if convicted on either Count 1 or Count 2. *See* 21 U.S.C. § 841(b)(1)(B)(viii). In addition, Count 3 carried a five-year

mandatory minimum prison sentence, which would have to run consecutive to any other sentence. *See* 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii).

Assistant Federal Defender Steven Babcock was appointed to represent Lanphear. *See* Order (Doc. 5). The Federal Defenders later withdrew due to a conflict of interest, and attorney Daniel Ball was appointed. *See* Order (Doc. 14).

On October 17, 2019, Lanphear moved to enter a guilty plea. At the hearing, however, she chose not to proceed. *See* Minutes (Doc. 30). Ball withdrew, and attorney Nicholas Miller was appointed in his place. *See* Order (Doc. 31).

On January 28, 2020, Lanphear filed a second motion to enter a guilty plea. On February 6, 2020, a fully executed plea agreement was filed, and Lanphear pled guilty in open court to Counts 1 and 3 of the indictment. *See* Minutes (Doc. 44); Plea Agreement (Doc. 45); Order (Doc. 50).

At sentencing, the Court found an offense level of 23 and a criminal history category of III. As to Count 1, the advisory guideline range was 57 to 71 months, increased slightly to 60 to 71 months in view of the five-year statutory mandatory minimum under 21 U.S.C. § 841(b)(1)(B)(viii). *See* Am. Statement of Reasons (Doc. 73) at 1 § III. Count 3, as explained above, carried a statutory mandatory minimum penalty of five years consecutive. The Court departed or varied downward on Count 1 and imposed a total prison term of 96 months, consisting of

36 months in Count 1 and 60 months on Count 2, consecutive, followed by a five-year term of supervised release. *See* Am. Statement of Reasons at 4 § VIII; Judgment (Doc. 69) at 2–3.

Lanphear did not appeal. Her conviction became final on August 31, 2020. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). She timely filed her motion under 28 U.S.C. § 2255 on June 11, 2021. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Lanphear claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, she must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Because Lanphear challenges counsel's advice to plead guilty, the second, "prejudice" prong of the test requires her to show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Lanphear's claims are reorganized here, but all are addressed.

4

### A. 18 U.S.C. § 924(c)

#### 1. Active Employment vs. Possession in Furtherance

Lanphear claims that counsel failed to realize that she could be convicted on Count 3 only if she "actively employed" a firearm. *See* Mot. § 2255 (Doc. 76) at 3 ¶ 5(A). She avers that she did not and never has actively employed a firearm against anyone and so is actually innocent of Count 3. *See id.* at 4 ¶ 5(C). She refers to "the Supreme Court's Bailey decision," that is, *Bailey v. United States*, 516 U.S. 137 (1995). *See* Mot. § 2255 at 3 ¶ 5(A).

*Bailey* does indeed hold that a defendant is not guilty of "using" a firearm "during and in relation to" a drug trafficking crime unless she "actively employs" the firearm. *See id.* at 142–43, 148. The case was decided on December 6, 1995. Three years later, Congress amended § 924(c) by "making it an offense to 'possess' a firearm 'in furtherance of'" a drug trafficking offense or crime of violence. *Dean v. United States*, 556 U.S. 568, 579 (2009) (Stevens, J., dissenting) (citing Pub. L. No. 105-386, § 1(a)(1), 112 Stat. 3469 (Nov. 13, 1998), and noting a senator called the amendment "the 'Bailey Fix Act'").

Lanphear was not charged, as Bailey was, with using a firearm during and in relation to a drug trafficking crime. The grand jury charged that Lanphear "possessed a firearm in furtherance of a drug trafficking crime" between June 2018 and January 22, 2019. Indictment (Doc. 7) at 3. Therefore, Bailey's case does not

5

control Lanphear's case.

The difference between the charge against Bailey and the charge against Lanphear, however, is not the only issue implicated in Lanphear's first claim. Section 924(c) provides, in part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i)   be sentenced to a term of imprisonment of not less than 5 years[.]

18 U.S.C. § 924(c)(1)(A) & (i) (emphasis added).

The disjunctive "or" is crucial. "[Section] 924(c) makes criminal a single offense that can be proven in two ways." *United States v. Thongsey*, 577 F.3d 1036, 1042 (9th Cir. 2009). In the first clause, the statute proscribes "the use or carrying of a gun during (a temporal connection) and in relation to (a substantive connection) a predicate crime." *Id.* (quoting *United States v. Arreola*, 467 F.3d 1153, 1159 (9th Cir. 2006)). The second clause proscribes "possessing a gun in furtherance of (with a particular purpose of advancing) the specified crime." *Id.* (quoting *Arreola*, 467 F.3d at 1159).

The indictment and the United States' offer of proof correctly reflected the language of the statute by stating that Lanphear possessed a firearm in furtherance

6

of a drug trafficking crime. *See* Indictment (Doc. 7) at 3; Offer of Proof (Doc. 43) at 3. The plea agreement did not. It said Lanphear possessed a firearm during and in relation to a drug trafficking crime. *See* Plea Agreement (Doc. 45) at 4 ¶ 4.

Potentially, this mistake as to the elements could mean Lanphear pled guilty to a nonexistent offense. But the record taken at the change of plea hearing negates this possibility. The United States correctly recited the elements of the offense, as it read the offer of proof into the record. *See* Offer of Proof (Doc. 43) at 3. Lanphear personally admitted that she did not disagree with anything the United States said about its evidence. *See id.* at 4–6. And United States Magistrate Judge Timothy J. Cavan specifically clarified with her the nature of her possession of the firearms. She admitted possessing the firearms for protection while she was involved in drug trafficking, which is possession in furtherance of drug trafficking. *See United States v. Hector*, 474 F.3d 1150, 1158 (9th Cir. 2007).

### 2. Simple Possession

To the extent Lanphear claims she pled guilty to "simple possession" of a firearm, *see* Mot. § 2255 at 3 ¶ 5(A), the record clearly shows she did not plead guilty to merely possessing firearms.

### 3. Conclusion

Counsel did nothing unreasonable by advising Lanphear to plead guilty to possessing a firearm in furtherance of a drug trafficking crime. The United States

7

was not required to prove she used a firearm during and in relation to drug trafficking. It had compelling evidence that would, in all likelihood, lead a reasonable juror to conclude beyond reasonable doubt that she possessed firearms to protect herself and her drugs. The incorrect statement of the elements in the plea agreement made no difference to Lanphear's actual guilty plea. Likewise, she suffered no prejudice from counsel's advice. There is no reasonable probability that she would have chosen to stand trial had the plea agreement correctly stated the elements.

Lanphear's first and third claims for relief, *see* Mot. § 2255 at 3 ¶ 5(A), 4 ¶ 5(C), are denied.

## B. Pressure to Decide and Failure to Investigate

Lanphear's second claim alleges that counsel coerced and rushed her to plead guilty and did not conduct an investigation adequate to support her innocence.

### 1. Advice and Coercion

Lanphear contends that counsel "coerced me into taking the plea deal because . . . I was going to get more time and my level of offense was going to go up if I didn't hurry and plead guilty." Mot. § 2255 at 4 ¶ 5(B).

Counsel's advice was correct. The United States typically sets a deadline for acceptance of a plea offer. Further, on December 9, 2019, the Court set a deadline

8

of February 10, 2020, for Lanphear to file a motion to change her plea. *See* Scheduling Order (Doc. 33) at 2. This was the seventh scheduling order issued in the case. Lanphear first appeared in this Court on a complaint on January 22, 2019. *See* Minutes (Doc. 3). She was arraigned on the indictment on February 26, and the first plea deadline was April 15, 2019. *See* Minutes (Doc. 10); Scheduling Order (Doc. 12) at 2 ¶ 1. She changed her mind about pleading guilty on December 2, 2019. *See* Minutes (Doc. 30). Lanphear did not enter her guilty plea until February 6, 2020. *See* Minutes (Doc. 44). These facts do not suggest that her decision was unduly rushed.

Further, just as counsel said, conviction at trial nearly always leads to a higher offense level under the Sentencing Guidelines than conviction by a guilty plea, because a person who pleads guilty nearly always earns a two- or three-level downward adjustment. *See* U.S.S.G. § 3E1.1. The third point can only be awarded on motion of the United States and depends on the defendant's "timely notifying authorities of his intention to enter a plea of guilty." *Id.* § 3E1.1(b). Because Lanphear took counsel's advice and acted in a timely fashion, she obtained a three-level downward adjustment. *See* Presentence Report ¶¶ 34–35. Without it, her advisory guideline range on Count 1 would have been 78 to 97 months. *See* U.S.S.G. ch. 5 Part A (Sentencing Table).

As for the allegation of coercion, all defendants must choose between

pleading guilty and standing trial. Being under pressure to make a decision does not render a guilty plea involuntary. In *United States v. Brady*, 397 U.S. 742 (1970), the Supreme Court held that a defendant's guilty plea was not coerced even though he was afraid that, if he opted for trial and was convicted, he would receive the death penalty. *See id.* at 749–50. If that was not coercion, then the facts Lanphear alleges do not amount to coercion either.

### 2. Fingerprints and Innocence

Lanphear also contends that she asked both of her attorneys, Ball and Miller, to test the packaging of the methamphetamine found in her home for fingerprints to show that she was innocent. She points out that she shared the apartment with her father[1] and his wife and that another person was present when the apartment was searched. *See* Mot. § 2255 at 4 ¶ 5(B).

A reasonable defense attorney could have decided that analyzing the packaging for fingerprints was not worthwhile. First, because the prosecution has the burden of proof, absence of evidence counts against the United States. If counsel does not request testing, he can argue at trial that the United States could have done the testing but did not. Second, the presence of a defendant's fingerprints on an item can be compelling evidence that the defendant touched the

---

[1] Some witnesses implicated Lanphear's father with her in the conspiracy. *See, e.g.*, Presentence Report ¶¶ 10, 14, 16.

10

item. But the absence of a defendant's prints on an item, or the presence of someone else's prints, is seldom compelling evidence that the defendant did not touch it. Identifiable fingerprints, like DNA, are not invariably left behind whenever someone touches something. Third, for all defense counsel knows, the client's prints might actually be found on the drug packaging.

More fundamentally, the United States did not have to prove that Lanphear personally handled the methamphetamine found in her home. By definition, a conspiracy involves more than one person. *See* Plea Agreement (Doc. 45) at 3 ¶ 4 ("the defendant agree with at least one person"). If someone else's prints were on the meth, that fact would not negate conspiracy. The meth and firearms found in the apartment home strongly corroborated the statements of witnesses who reported obtaining methamphetamine from Lanphear, and so did the surveillance of her Colorado trip. And before the Colorado trip, Lanphear's Facebook page stated she was "taking orders" and "heading south" along with a photograph of something that looked like a large crystal of methamphetamine. *See* Offer of Proof (Doc. 43) at 4–5[2]; *see also* Presentence Report ¶¶ 10–15, 18 (describing witness

---

[2] Again, the plea agreement and, as to Count 1, the offer of proof varied from the indictment. The indictment alleged that Lanphear conspired to possess methamphetamine with intent to distribute it. *See* Indictment (Doc. 7) at 2. The plea agreement and offer of proof alleged she conspired to distribute methamphetamine. *See* Plea Agreement at 3 ¶ 4; Offer of Proof at 3. However, a variance is material only if the evidence might have supported conviction for different behavior than the indictment alleges. *See, e.g., United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002) (citing cases). Perhaps in another case, that might happen, but here, reasonable defense counsel would find no support for going to trial in the hope of obtaining a

statements). Against this evidence, the absence of Lanphear's fingerprints and the presence of other people in her apartment did not suggest she had a strong defense or a realistic chance of acquittal at trial.

### 3. Conclusion

Lanphear's allegations do not support either prong of the Strickland test. Counsel correctly advised her that she had to choose whether to plead guilty or stand trial and that her offense level under the Sentencing Guidelines would be higher if she "didn't hurry." The fact that other people were present in her apartment and evidence that her fingerprints were not on the methamphetamine would not likely undermine the weight of the evidence described in the United States' offer of proof. Consequently, there is no reasonable probability she would have opted for trial if counsel's advice had been wrong or if counsel had proved her fingerprints were not on the methamphetamine packaging.

Lanphear's second claim for relief, *see* Mot. § 2255 at 4 ¶ 5(B), is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255

---

dismissal based on the variance. The evidence described in the offer of proof supported both agreement to distribute and agreement to possess with intent to distribute. *See* Offer of Proof at 4–6. And the only evidence of the quantity and quality of the methamphetamine came from the search of Lanphear's apartment. *See id.* at 6.

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Lanphear's claims do not meet even the relatively low threshold required for a COA. She does not identify any respect in which counsel's performance was unreasonable. Nor does she identify any reasonable probability of a different outcome if counsel had done something differently. Her guilty pleas were knowing, voluntary, and intelligent. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Pursuant to 28 U.S.C. § 753(f), the Court CERTIFIES that the transcript of the change of plea hearing, held February 6, 2020, is needed to decide the issues Lanphear presents.

2. The United States shall immediately order the transcripts of those hearings for the Court's file and shall deliver a copy to Amber Lynn Lanphear, BOP # 17503-046, FCI Dublin, Federal Correctional Institution, 5701 8th St. –

Camp Parks, Dublin, CA 94568.

3. Lanphear's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 76) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Lanphear files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 21-71-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Lanphear.

DATED this 7th day of January, 2022.

Susan P. Watters
United States District Court